# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### August 4, 2010 Session

## LARRY H. COLEMAN v. MATTHEW KISBER, ET AL.

**Direct Appeal from the Chancery Court for Davidson County**
**No. 10-137-IV      Russell T. Perkins, Judge**

---

**No. M2010-00642-COA-R3-CV - Filed October 4, 2010**

---

This case involves a petition for access to certain documents pursuant to the Tennessee Public Records Act, Tenn. Code Ann. § 10-7-101 *et seq*. The Appellees asserted in the trial court, and on appeal, that the documents are confidential and privileged pursuant to the tax information and tax administration information exceptions found in Tenn. Code Ann. § 67-1-1702; pursuant to the "ECD exception" provided in Tenn. Code Ann. § 4-3-730(c); and also pursuant to the Deliberative Process Privilege. The trial court denied the Appellant's petition finding that the ECD exception applied and therefore, held that the documents at issue should remain confidential for five years. The trial court, however, found that the tax information and tax administration information exceptions did not apply and declined to apply a Deliberative Process Privilege. Appellant appealed the trial court's denial of his petition. On appeal, the Appellees assert that the trial court erred in not finding the tax information and tax administration information exceptions applicable and in not applying the Deliberative Process Privilege. After reviewing the record, including the withheld documents, we find that the trial court erred in not finding that the tax information and tax administration information exceptions, as provided in Tenn. Code Ann. § 67-1-1702, applied. Consequently, we affirm the trial court's denial of the Appellant's petition but for different reasoning.

### Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed in part and Reversed in part

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., joined and HOLLY M. KIRBY, J. filed a separate concurring opinion.

Steven A. Riley and James N. Bowen, II, Nashville, Tennessee, for the appellant, Larry H. Coleman.

Robert E. Cooper, Jr., Attorney General and Reporter; Janet M. Kleinfelter, Deputy Attorney General; Joe R. Shirley, Assistant Attorney General; Virginia Barham, Assistant Attorney General for appellees, Matthew Kisber and Reagan Farr.

## OPINION

In 2009, the Tennessee General Assembly enacted the Tennessee Small Business Investment Company Credit Act, Tenn. Code Ann. §4-28-101 *et seq.*("TNInvestco Act") in an effort to spur economic development and job creation. Under the TNInvestco Act, the State allocates up to $120 million in tax credits to up to six "qualified TNInvestcos."[1] The chosen TNInvestcos then sold the tax credits to participating insurance companies (taxpayers) to generate capital. The insurance companies purchasing the tax credits could then use the tax credits to reduce their tax liability in the years 2012 through 2019. According to the statute, the decision of which qualified TNInvestcos will receive the tax credit lies within the sole discretion of the Commissioner of Economic and Community Development and the Commissioner of Revenue. To assist them in making their decisions, the Appellees, the Commissioner of Revenue, Commissioner Reagan Farr, and the Commissioner of Economic and Community Development, Commissioner Mathew Kisber, developed an evaluation matrix which they each used separately to evaluate and rank the entities which applied.

Twenty-five entities, including Appellant Larry H. Coleman's ("Mr. Coleman") company – Coleman Swenson Booth Inc., – applied to become a TNInvestco and to receive the tax credit. From these twenty-five, Commissioner Kisber and Commissioner Farr chose ten finalists. As announced by the Commissioners, the finalists were the ten entities which received the highest score on the TNInvestco evaluation matrices developed by the Commissioners. On November 5, 2009, Commissioner Kisber and Commissioner Farr announced the six entities chosen to receive the tax credit, along with two alternates. Unfortunately, Mr. Coleman's company was not one of the chosen entities.

Mr. Coleman and his attorney made several public records requests in December 2009 and January 2010. The Commissioners responded to these requests and provided some, but not all, of the requested records related to the TNInvestcos. The Commissioners asserted that some of the requested documents did not exist and denied the requests for other documents which the Commissioners determined to be confidential under State law.

This case began on January 27, 2010 when Mr. Coleman filed his Petition for Access

---

[1]A "TNInvestco" is a business which completes the application process and is certified by the Department of Economic and Community Development as meeting the established criteria.

to Public Records. In his petition, Mr. Coleman requested that the trial court order the Commissioners to turn over all of the requested records "pursuant to the Tennessee Public Records Act, Tenn. Code Ann. § 10-7-503 *et seq*." Mr. Coleman also requested that the trial court award him attorney's fees. The parties agree that the documents in dispute on appeal are (1) the twenty-five scored evaluation matrices, (2) a Tax Credit Purchase Agreement, (3) a Side Letter to that Agreement, and (4) the Letters of Understanding between an insurance company and a TNInvestco regarding the purchase of investment tax credits. The documents at issue were filed on February 9, 2010, under seal for review by the court.

On February 5, 2010, the trial court entered an order requiring the Commissioners to appear on February 16, 2010 and show cause as to why Mr. Coleman's petition should not be granted.

On February 9, 2010, the Commissioners filed a response to Mr. Coleman's petition. In their response, the Commissioners asserted that the information requested, was (1) confidential "tax information" or "tax administration information" pursuant to Tenn. Code Ann. § 67-1-1702; (2) was confidential pursuant to Tenn. Code Ann. § 4-3-730(c) (the "ECD exception") as the records were designated by the Commissioner of Economic and Community Development with the agreement of the Attorney General, as harmful to the ability of this state to compete or conclude agreements or contracts for economic or community development; and (3) that the scored evaluation matrices were protected by the Deliberative Process Privilege. Accordingly, the Commissioners requested that the trial court deny Mr. Coleman's petition.

On February 9, 2010, Commissioner Farr, as Commissioner of the Department of Revenue, filed an affidavit. His affidavit details his background and experience as well as the process he and Commissioner Kisber utilized in selecting the six entities to receive the tax credit. His affidavit details what is considered "taxpayer information" or "tax administration information" and therefore confidential pursuant to Tenn. Code Ann. §67-1-1702. He also explains why he believes it is in the best interests of the State not to produce the requested documents. In pertinent part, his affidavit provides:

> 14. Business tax incentives and credits are enacted by states (and by Congress) for various reasons. The Tennessee General Assembly has enacted a number of statutes authorizing business tax incentives and credits that are designed to generate economic development and create jobs in Tennessee .... Furthermore, the General Assembly has charged the Department of Revenue with administering these tax credits and incentives. In administering these programs, the Department has consistently considered the

information created by the Department or collected from participants in the programs used by the Department to constitute "tax administration information" as provided in Tenn. Code Ann. §§67-1-1701(6)-(7). Additionally, the Department has consistently considered information related to such programs to be "taxpayer information" as provided in Tenn. Code Ann. § 67-1-1701(8) if the information concerns a *taxpayer's identity* or the *nature, source, or amount of the taxpayer's* income, payments, receipts, deductions, exemptions, *credits*, assets, liabilities, net worth, tax liability, tax collected, deficiencies, over assessments, or tax payments.

15. As described above, the TNInvestco program represents a tax policy decision enacted by the General Assembly that is formulated to generate economic development in Tennessee. Accordingly, the Department considers information created by the Department or obtained from participants in this program and used by the Department in administering and executing the program to constitute tax administration information. To the extent that such information identified a taxpayer participating in the TNInvestco program or identifies the nature, source, or amount of the taxpayer's investment tax credit issued under this program, the Department considers such information to constitute tax information.

16. Tenn. Code Ann. § 67-1-1702 provides that "tax information" and "tax administration information" shall be confidential and shall not be disclosed by any officer or employee of the State or by any other person, except as otherwise authorized under title 67, chapter 1, part 17. Tenn. Code Ann. § 67-1-1711 provides that the Commissioner of Revenue is authorized to disclose tax administration information if the commissioner determines that such disclosure is in the best interests of the State. Accordingly, information obtained in connection with the Department's administration and execution of the TNInvestco program will be disclosed only in accordance with these statutes.

\*                          \*                          \*

-4-

30. Based on my experience in administering business tax incentive programs and recruiting businesses to the State, as set forth above, and in the exercise of my discretion given to me as the Commissioner of Revenue under Tenn. Code Ann. § 67-1-1711, I have determined that the disclosure of the withheld documents is not in the best interests of the State. Participation of qualified businesses is fundamental to the success of the State tax policies like the TNInvestco program- policies that are designed to generate economic growth and development through the offering of business tax incentives and credit. Because all of the withheld documents, except for the scored matrices, contain proprietary business and financial information of qualified TNInvestcos and/or participating insurance companies, I have determined that their disclosure will inhibit businesses from participating in future rounds of the TNInvestco program, as well as in future economic development tax incentive programs.

31. With respect to the scoring matrices, I have determined that public disclosure of these documents would not be in the best interests of the State because such disclosure could also chill participation in future rounds of the TNInvestco program, as well as in future economic tax incentive programs. The General Assembly created the TNInvestco program for the purpose of growing small business in Tennessee by generating capital through the use of tax credits. The program's success is dependent upon attracting a pool of well qualified TNInvestco applicants from which the State chose those applicants whose investment strategies are most closely aligned with the economic development strategies of the State. Commissioner Kisber and I used the scoring matrices as a tool for ranking the applicants for purposes of reducing the pool from twenty-five to the ten applicants that we would interview. Making public that the State ranked Firm X ten places higher than Firm Y would only do harm to those firms who chose to participate in the evaluation process and would undoubtedly have a chilling effect on future participation in any similar economic incentive program. Furthermore, the State only ranked the firms in the context of the State's economic development goals, but the appearance could be that the State considers certain firms to be "better" than

-5-

others, which is certainly not the case. Moreover, there would be no benefit to making these documents public. By the very nature of the program, it is already known which firms were ranked in the top ten for purposes of conducting follow-up interviews. Whether another firm was ranked eleventh or twenty-fifth on the scoring matrix is irrelevant and disclosure of that information would only do harm to the TNInvestco program itself, as well as the State's long-term goals for economic development.

(emphasis original). Commissioner Farr also asserted the Deliberative Process Privilege as to the evaluation matrices.

Commissioner Kisber, as Commissioner of the Department of Economic and Community Development, also filed an affidavit on February 9, 2010. In it he details his background and experience as well as the process he and Commissioner Farr utilized in selecting the six entities to receive the tax credit. In pertinent part, his affidavit provides:

11. As was previously determined under Tenn. Code Ann. § 4-3-730(c) that information supplied to the State in response to Part 2 of the TNInvestco application should be confidential and not subject to personal inspection by any citizen of Tennessee. I have also determined, with General Cooper's affirmative agreement, that the documents Commissioner Farr and I are withholding from public inspection by Mr. Coleman are of such a sensitive nature that their disclosure or release would seriously harm this State's ability to conclude agreements or contracts for economic or community development. Shortly after I became Commissioner, I met with Attorney General Paul Summers to discuss how we should proceed when public records requests are made for information that I think should be confidential under Tenn. Code Ann. § 4-3-730(c), and General Cooper and I are following that same process under which the Attorney General reviews documents that I deem to be sensitive, we discuss my reasoning, and if he agrees that the documents or information is of such a sensitive nature that its disclosure or release would seriously harm the ability of the State to compete or conclude agreements or contracts for economic or community development, his staff then sends me a memo to memorialize our discussion. I have attached as Exhibit B to this affidavit the

memorandum that I received from the Attorney General's Office memorializing our decision that the records being withheld from public inspection in this lawsuit are of such a sensitive nature that their disclosure or release would seriously harm the ability of the State to compete or conclude agreements or contracts for economic or community development.

12. More specifically, Commissioner Farr has determined that the Tax Credit Purchase Agreement; the Side Letter to this agreement; a Letter of Understanding between an insurance company and one of the TNInvestcos; . . . and the completed scoring matrices that we used as a tool in awarding the tax credit allocations are tax information under Title 67 of the Tennessee Code or tax administration information that is therefore confidential. In addition, it is my determination under Tenn. Code Ann. § 4-3-730(c), to which the Attorney General has affirmatively agreed, that this same information is of such a sensitive nature that its disclosure or release would seriously harm the ability of our State to compete or conclude agreements or contracts for economic or community development.

13. My reasons for this determination include that, the tax credits created by the Act, and that Commissioner Farr and I have awarded to the six qualified TNInvestcos, have been sold to insurance companies under the Act in order to raise capital to be invested in small businesses qualified under the statutes. In light of my experience in working to grow economic development in Tennessee, it is my opinion that disclosing the details of the financial transactions under the TNInvestco program would seriously harm the State's ability to conclude future agreement or contracts for economic or community development. Commissioner Farr and I are working with members of the legislature in an effort to expand the TNInvestco program this legislative session. The price of the tax credits that have been sold resulted from private negotiations by the TNInvestcos, brokers on their behalf, and various insurance companies. If details of these financial transactions become part of public domain, that would remove the market forces and artificially set a floor and ceiling for future tax credit sales under the program, thereby harming the State's ability to raise as much

capital from the future sale of tax credits as possible.

14. Further, an insurance company that may have paid more than a competitor for the tax credits received could be harmed in its business reputation. In my opinion, for this program to be successful, it needs a large pool of insurance companies willing to participate, and disclosing their investment decisions to the general public will deter participation. Additionally, the scoring matrices reflect my judgment of a TNInvestco's application, not necessarily what I might think of the firm separate and apart, for example, from its proposed strategy for achieving transformational economic development outcomes through focused investments of capital in seed or early stage companies with high-growth potential. A firm I may have scored low on its application because of its proposed strategy could be hurt in its business reputation if the scores become public record, and the public were to misunderstand the matrices were only a guide for my decision under the TNInvestco Program, and not necessarily my opinion on whether a particular firm might be a good choice for its clients and investors in other circumstances, trying to achieve goals different from those of the TNInvestco Program. In my experience, the willingness of insurance companies and venture capital firms to participate in future rounds of the TNInvestco Program, or even in future state programs of a similar nature, will be seriously harmed if the details of their financial transactions to date under the Act are disclosed or released to the general public.

Attached to Commissioner Kisber's affidavit was the memorandum from the Attorney General's office which memorialized the discussion the Commissioners and the Attorney General had regarding the confidentiality of the requested documents. The memorandum states that the Attorney General reviewed the documents at issue and agreed that the documents should be confidential pursuant to the ECD exception under Tenn. Code Ann. § 4-3-730(c). The memorandum explains in detail the concerns with releasing the documents as discussed by the Commissioners and the Attorney General. Some of these concerns include: that disclosing the details of the financial transactions by which the tax credits were sold would harm the State's ability to conclude future agreements in the TNInvestco program; that an insurance company participating in these transactions may have its business reputation harmed by the release of the details of the financial transactions; that the prices paid could become the floor and the ceiling for future transactions, thus harming the State's

ability to raise capital; and that the release of the documents would chill the willingness of insurance companies and venture capital firms to participate in the TNInvestco program in the future, harming the future success of the program. The memorandum also details the discussion had regarding the evaluation matrices and the concern that the release of this information could harm a business' relationship with others and put it at a disadvantage; and that releasing these matrices would chill willingness to participate in the TNInvestco program in the future, harming the State's ability to conclude the sale of tax credit agreements in the future for purposes of economic development.

On February 11, 2010, Mr. Coleman filed a memorandum of law in support of his petition. In this memorandum, Mr. Coleman asserted that if the Commissioners were concerned about releasing the identities of the insurance companies that purchased the tax credits, they could redact the names and prices paid. Mr. Coleman also asserted that the Commissioners had waived any privilege or confidentiality by releasing a blank copy of the scoring matrix and by announcing that the ten finalists were the entities that had scored the highest on the matrices. Mr. Coleman also asserted that the privileges claimed and confidentiality exceptions asserted by the Commissioners were inapplicable.

On February 12, 2010, the Commissioners filed a reply. In this reply, the Commissioners asserted that they had not waived the exception as (1) they had not voluntarily disclosed the withheld documents and then sought to gain an advantage through selective disclosure and (2) the exception is not a qualified, equitable privilege that is subject to waiver. Further, the Commissioners asserted the Deliberative Process Privilege, the "tax information" and "tax administration information" exceptions, and the ECD exception. Moreover, the Commissioners submitted that redaction was not required.

A hearing was held on February 16, 2010 at which each side presented its arguments to the trial court, relying on the affidavits submitted. Following the hearing, Mr. Coleman filed a "Post Hearing Brief." Attached to this brief were affidavits from several of the TNInvestcos which were not among the ten finalists. Each affidavit asserts that the respective TNInvestco does not object to the State releasing the scored evaluation matrices reflecting the firm's scores and ranking.

On March 2, 2010, the trial court filed a memorandum containing its decision. First, the trial court found that the "tax administration information" and "tax information" exceptions provided in Tenn. Code Ann. § 67-1-1702 do not apply to the documents in question. The trial court explained that the documents were not submitted "as part of a past or current tax review by the Department of Revenue" and also that "no past or current need to apply the Tennessee tax law exists and no need to invoke Tennessee's tax administrative mechanisms is present." As to the ECD exception, pursuant to Tenn. Code Ann. § 4-3-730,

the trial court found, after reviewing the documents at issue, "that the records could reasonably be characterized as sensitive documents that 'disclosure or release would seriously harm the ability of our State to compete or conclude agreements or contracts for economic or community development,'" and that therefore the exception applied. Next, the trial court found that the Deliberative Process Privilege has not been adopted in Tennessee and declined to adopt the privilege in this case. The trial court also declined to find that the Commissioners waived the confidentiality of the documents. The trial court based this decision on two reasons: (1) that the authorities supplied by Mr. Coleman do not apply to the statutory exceptions and that there must be an intentional waiver of the statutory exceptions and (2) that even if the authorities provided by Mr. Coleman apply, the conduct of the Commissioners did not amount to a waiver. The trial court declined to rule on the argument that the statutory exceptions could not be waived. Finally, the trial court found that the Commissioners failure to produce the requested documents was not willful, and therefore did not award Mr. Coleman attorney's fees.

On March 4, 2010, the trial court entered an order reflecting its decision. This order incorporates the trial court's memorandum by reference and denies Mr. Coleman's petition. Also, the trial court ordered that the four documents at issue remain confidential and under seal for a period of five years.

Mr. Coleman filed a notice of appeal on March 9, 2010. He raises five issues for our review. We restate them as follows:

1. Whether the trial court erred in finding that the Commissioners were entitled, pursuant to Tenn. Code Ann. § 4-3-730(c), to withhold the documents in their entirety as opposed to redacting the portions of the information identified by Commissioner Kisber as harmful?

2. Whether the trial court erred in finding that Commissioner Kisber was entitled to withhold the requested documents pursuant to Tenn. Code Ann. § 4-3-730(c)?

3. Whether Commissioner Kisber's withholding of the evaluation matrices pursuant to Tenn. Code Ann. § 4-3-730(c) was reasonable?

4. Whether the trial court erred in finding that the Commissioners did not waive any right they had to withhold the evaluation matrices from disclosure?

5. Whether the trial court erred in finding that Mr. Coleman was not entitled to his attorney's fees?

On Appeal, the Commissioners also raise two issues for our review. We restate them as follows:

1.  Whether the trial court erred by not finding that the documents requested were "tax information" or "tax administration information" confidential pursuant to Tenn. Code Ann. § 67-1-1702?

2.  Whether the trial court erred in finding that the Deliberative Process Privilege did not apply in this case to exempt the scored matrices from public disclosure?

**Standard of Review**

We review the trial court's findings of fact *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). No presumption of correctness, however, attaches to the trial court's conclusions of law and our review is *de novo*. ***Bowden v. Ward***, 27 S.W.3d 913, 916 (Tenn. 2000).

The construction of a statute is a question of law which we will review *de novo* with no presumption of correctness as to the trial court's conclusions. ***Ivey v. Trans. Global Gas & Oil***, 3 S.W.3d 441, 446 (Tenn. 1999). When interpreting a statute, we are "to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." ***Owens v. State***, 908 S.W.2d 923, 926 (Tenn. 1995). "Courts must restrict their review 'to the natural and ordinary meaning of the language used by the legislature in the statute, unless an ambiguity requires resort elsewhere to ascertain legislative intent.'" ***Ardoin v. Laverty***, M2001-03150-COA-R3-JV, 2003 WL 21634419, at *4 (Tenn. Ct. App. July 11, 2003) (quoting ***Browder v. Morris***, 975 S.W.2d 308, 311 (Tenn. 1998) (citations omitted)).

**Analysis**

The Public Records Act creates a presumption of openness as to government documents. As provided in Tennessee Code Annotated section 10-7-503(a)(2)(A):

> All state, county and municipal records shall, at all times during business hours, which for public hospitals shall be during the business hours of their administrative offices, be open for personal inspection by any citizen of this state, and those in charge of the records shall not refuse such right of inspection to any citizen, unless otherwise provided by state law.

However, the final clause of Tenn. Code Ann. § 10-7-503(a)(2)(A) states that documents are open to inspection by the public "*unless otherwise provided by state law*," qualifying the presumption of openness by creating an exception for any document which another state law designates as protected or privileged. *See also **Arnold v. City of Chattanooga**,* 19 S.W.3d 779 (Tenn. Ct. App. 2000). "It was the legislature that opened the door making records public in the first place. Certainly, . . . the legislature could decide that its policy was too broad and close the door on certain records." ***Thompson v. Reynolds***, 858 S.W.2d 328, 329 (Tenn. Ct. App. 1993).

One such exception is provided in Tennessee Code Annotated § 67-1-1702(a) which provides:

> Notwithstanding any provision of law to the contrary, returns, *tax information and tax administration information shall be confidential* and, except as authorized by this part, no officer or employee of the department and no other person, or officer or employee of the state, who has or had access to such information shall disclose any such information obtained by such officer or employee in any manner in connection with such officer's or employee's service as an officer or employee, or obtained pursuant to the provisions of this part, or obtained otherwise.

(emphasis added). However, "tax information" is "subject to disclosure to the taxpayer who is the subject of that information." ***Bridgestone v. Chumley***, No. M2007-00813-COA-R9-CV, 2008 WL 2415483, at *6 (Tenn. Ct. App. June 11, 2008) (citing Tenn. Code Ann. § 67-1-1703(a)).[2] Although, "[t]ax information shall not . . . be disclosed to such person or

---

[2]Tenn. Code Ann. § 67-1-1703(a) provides:

> The commissioner shall, subject to such requirements and conditions as may be prescribed by rules, disclose the return of any taxpayer, or *tax information with respect to such taxpayer, to such person or persons as the taxpayer may designate* in a written request for or consent to such disclosure, or to any other person at the taxpayer's request to the extent necessary to comply with a request for information or assistance made by the taxpayer to such other person. *Tax information shall not, however, be disclosed to such person or persons if the commissioner determines that*

(continued...)

-12-

persons if the commissioner determines that such disclosure would be seriously burdensome to tax administration." Tenn. Code Ann. § 67-1-1703. Tax administration information is not subject to disclosure upon demand of a taxpayer. **Bridgestone**, 2008 WL 2415483, at *6. However, the Commissioner of the Department of Revenue is authorized to disclose tax administration information "if the commissioner determines that such disclosure is in the best interest of the state...." Tenn. Code. Ann. § 67-1-1711.[3] Further, the code provides that it is a Class E felony for any person to disclose, except as authorized by law, tax information. Tenn. Code Ann. § 67-1-1709; see also **Bridgestone**, 2008 WL 2415483, at *6.

The terms tax information, tax administration, and tax administration information are all specifically defined by the code. Tax information:

> means a *taxpayer's identity*, the nature, source, or amount of the taxpayer's income, payments, receipts, deductions, exemptions, *credits*, assets, liabilities, net worth, tax liability, tax collected, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be, examined or subject to other investigation or processing, *or any other data, received by, recorded by, prepared by, furnished to, or collected by, the commissioner* with respect to a return or with respect to the determination of the existence, or possible existence, of liability,

---

[2](...continued)
*such disclosure would be seriously burdensome to tax administration.*

(emphasis added).

[3]Tenn. Code Ann. § 67-1-1711 provides:

> The commissioner is authorized to disclose tax administration information, other than returns and tax information, if the commissioner determines that such disclosure is in the best interests of the state; provided, that no provision of law shall be construed to require disclosure of criteria or standards used or to be used for the selection of returns or persons for audit or examination, or data used or to be used for determining such criteria or standards, if the commissioner determines that such disclosure will impair assessment, collection, or enforcement under state tax laws.

or the amount of the liability, of any person for any tax, penalty, interest, fine, forfeiture, or other penalty, imposition or offense, administered by or collected by the commissioner, either directly or indirectly. "Tax information" does not include data in a form that cannot, either directly or indirectly, be associated with, or otherwise be used to identify, directly or indirectly, a particular taxpayer[.]

Tenn. Code Ann. § 67-1-1701(8) (emphasis added).  Tax administration information:

means criteria or standards used or to be used for the selection of returns or persons for audit or examination, or data used or to be used for determining such criteria or standards; audit procedures; *and any other information relating to tax administration*[.]

Tenn. Code Ann. § 67-1-1701(7) (emphasis added).  Tax administration is defined in the code as:

the administration, management, conduct, direction, and supervision of the execution and application of the state tax laws, rules, or related statutes or rules and reciprocity agreements with the several states or federal government to which the state of Tennessee is a party. "Tax administration" also means the development and formulation of state tax policy relating to existing or proposed tax laws, related statutes and reciprocity agreements and includes assessments, collection, enforcement, litigation, publication, and statistical gathering functions under such laws, statutes, rules or reciprocity agreements[.]

Tenn. Code Ann. § 67-1-1701(6).

The courts of this State have only had a couple of opportunities to review the application of the "tax information" and "tax administration information" exceptions to the Public Records Act.  In ***McLane Co. v. State***, 115 S.W.3d 925 (Tenn. Ct. App. 2003), this

Court reviewed a trial court's decision to grant a licensed wholesale tobacco distributor's petition, under the Tennessee Public Records Act, seeking disclosure of the identities of all licensed wholesale tobacco distributors in Tennessee. This Court reversed the trial court, finding that the tax information exception as provided in Tenn. Code Ann. § 67-1-1702 applied and therefore, the identities of the licensed wholesale tobacco distributors must remain confidential. *Id.* at 931. This Court recognized that "the licensing and taxing functions performed by the Department [of Revenue] are separate and distinct in nature," but found that the confidentiality provisions of Tenn. Code Ann. § 67-1-1702 apply to the information collected by the Department of Revenue during the licensing procedure. *Id.* at 930. This Court reasoned that the licensed wholesale tobacco distributors were required to pay a tax to the Department of Revenue under Tenn. Code Ann. § 67-4-1002, for the privilege of selling tobacco in Tennessee, and that therefore, the identity of all of the licensed wholesale tobacco distributors was confidential "tax information" pursuant to Tenn. Code. Ann. § 67-1-1702. *Id.* In making this decision, the Court compared the laws regarding the licensed wholesale tobacco distributors to the laws governing the taxation of petroleum products. *Id.* at 931. This Court noted that the legislature specifically provided in Tenn. Code Ann. § 67-3-2011 that the Commissioner of the Department of Revenue, as he deemed necessary, could release a list of all current licensees of petroleum products. *Id.* The Court explained, that the legislature could have provided the same exception for the identities of those licensed as wholesale tobacco distributors. *Id.* However, since the General Assembly chose not to provide such an exception, the identities must remain confidential as provided in Tenn. Code Ann. § 67-1-1702.

This Court again had the opportunity to discuss the application of the tax administration information and the tax information exceptions in *Bridgestone v. Chumley*, No. M2007-00813-COA-R9-CV, 2008 WL 2415483, at *6 (Tenn. Ct. App. June 11, 2008). The documents Bridgestone sought related to its audit and its claim for a tax refund. *Id.* at *3. In *Bridgestone*, the issue revolved around whether the documents sought constituted tax administration information or tax information. *Id.* at *4-5. This distinction was important because if the documents at issue constituted tax administration information they would be confidential pursuant to Tenn. Code Ann. § 67-1-1702. However, if the documents at issue were tax information, they must be disclosed to the taxpayer to which they pertained, unless disclosure was "seriously burdensome." *Id.* at *6. In considering this issue, the Court found that there are two purposes of the "Confidentiality Act": "(1) to protect the confidentiality of taxpayer information from third parties and (2) to further the Department's ability to formulate tax policy; develop standards, criteria and audit procedures; and administer, manage, and enforce the tax laws." *Id.* at *13.

This Court found that "insofar as the documents withheld by the Department . . .

reflect on the Department's consideration or internal discussion of the question of law [or policy] presented by Bridgestone" – whether it can be subjected to more than one audit – the documents are tax administration information even though they refer to a specific taxpayer. Further, the trial court found that "[t]o the extent . . . the documents reflect on the Department's determination of a factual matter relating to an audit of a taxpayer, they are taxpayer specific and not excluded from disclosure as 'tax information that does not include data in a form that cannot, either directly or indirectly, be associated with, or otherwise used to identify, directly or indirectly, a particular taxpayer.'" *Id.* at *12. The "touchstone" in this analysis, as noted by the Court, was the term "data." *Id.* This Court defined "data" as "'factual information (as measurements or statistics) used as a basis for reasoning, discussion, or calculation.'", *id.* (citing Webster's Ninth New Collegiate Dictionary 325 (1986)), and also as "'organized information generally used as the basis for an adjudication or decision. Commonly, organized information, collected for a specific purpose.'" *Id.* (citing Black's Law Dictionary 395 (6[th] ed. 1990)). Using these definitions, this Court held that "to the extent to which the withheld documents reflect the Department's recording or preparation of information used to determine the existence or amount of Bridgestone's tax liability, they are tax information as defined by the code." *Id.*

In the present case, the trial court found that the withheld documents did not constitute tax information or tax administration information. As provided in its order, the trial court reasoned that the documents "were not submitted to Commissioner Farr as part of a past or current tax review by the Department of Revenue." Further, the trial court stated in its order that it "is reluctant to rule that the foregoing tax law exceptions clearly apply to exclude from public disclosure documents gathered under the TNInvestco Act where, as here, no past or current need to apply the Tennessee tax law exists and no need to invoke Tennessee's tax administrative mechanisms is present."

The Commissioners assert on appeal that the trial court erred. Specifically, they assert that the TNInvestco Act is a state tax law or related statute, that the documents at issue were used to award, issue, and administer the tax credits provided by the TNInvestco Act and therefore, the documents are confidential under the tax administration information exception. Additionally, the Commissioners assert that the Letter of Understanding also constitutes confidential tax information.

After thoroughly reviewing the record, including the withheld documents, we find that the trial court erred in not finding the tax administration information and tax information exceptions applicable in this case. First, we find the trial court's interpretation of tax administration as only involving a past or present tax review to be too narrow. As

defined in Tenn. Code Ann. § 67-1-1701, tax administration includes the "administration, management, conduct, direction, and supervision of the execution and application of the state tax laws, rules, or related statutes . . . [and] also means the development and formulation of state tax policy relating to existing . . . tax laws, [or] related statutes." The TNInvestco Act provides for up to $120 million in tax credits to be distributed to up to six businesses as qualified and chosen solely by the Commissioner of the Department of Revenue and the Commissioner of the Department of Economic and Community Development. Moreover, the TNInvestco Act provides for the method for determining the amount of tax credit a chosen investor may take each year. Further, the TNInvestco Act provides the qualifications necessary and the criteria to be considered by the Commissioners in determining which applicants will receive the tax credits. While not located within Title 67 of the code, the title involving taxes, the TNInvestco Act is clearly related to the administration of taxes and the determination of tax liability in Tennessee. It would be illogical for this Court to conclude that  the statute which creates and provides the mechanism for awarding $120 million in tax credits to be unrelated to the tax laws and policy of this State.

Even if we assume that the TNInvestco Act is not directly related the Department of Revenue's taxing function, under the reasoning in *McLane* the documents are still protected. In *McLane*, this Court held that the identities of all the licensed wholesale tobacco distributors was confidential tax information after recognizing that the Department of Revenue's taxing function was entirely separate from its licensing function. *McLane*, 115 S.W.3d at 930. Additionally, Tenn. Code Ann. § 67-1-1702 provides that no officer or employee of the Department shall disclose tax information or tax administration information "obtained by such officer or employee in *any* manner in connection with such officer's or employee's service as an officer or employee...." (emphasis added). The withheld documents were obtained by Commissioner Farr as part of his duties as Commissioner of the Department of Revenue. Consequently, they will be protected if they constitute tax administration information or tax information.

The trial court reviewed the documents at issue and held that the tax administration information and tax information exceptions did not apply. On appeal, we have conducted our own independent review of the documents. After reviewing the withheld documents, we have determined that all of the information contained within these documents constitutes tax administration information. The Tax Credit Purchase Agreement and the Side Letter set forth the terms and conditions controlling the placement, purchase and use of the investment tax credits by detailing the terms and conditions for brokering the tax credits to taxpayers, setting forth the procedures for issuing the tax credits and for the redemption of the tax credits. The Letter of Understanding provides the terms and conditions for the purchase of

the tax credit by a particular taxpayer, who is identified in the letter. It also provides the amount of the named taxpayer's tax credit, names the TNInvestco that sold the credit to the named taxpayer and states how much the taxpayer paid for the tax credit. The scored evaluation matrices provide the Commissioners' thoughts and mental processes behind their decision regarding which TNInvestcos would be awarded the tax credits. The withheld documents clearly relate to the Department of Revenue's administration, execution, and supervision of the TNInvestco Act and its effect on the administration of the tax laws of this State. Further, the documents evidence the development and formulation of the tax policy behind the TNInvestco Act as developed by the Commissioners. As stated by this Court in *Bridgestone*, part of the purpose behind the "Confidentiality Act" is to "further the Department's ability to formulate tax policy . . . and administer, manage and enforce the tax laws." *Bridgestone*, 2008 WL 2415483, at *13. Withholding these documents furthers that purpose by allowing the Department of Revenue to develop and implement the TNInvestco Act in a manner which will further the goals of the legislature in enacting the TNInvestco Act – spurring economic development and raising capital.

Because all of the information contained within the withheld documents constitutes tax administration information, absent a decision by the Commissioner of Revenue that disclosure is in the best interests of the State, the documents cannot be disclosed. Tenn. Code Ann. § 67-1-1711. The decision to disclose tax administration information lies solely within the discretion of the Commissioner of the Department of Revenue. Tenn. Code Ann. § 67-1-1711. As provided in his affidavit, the Commissioner has determined that it is not in the best interests of the State to release the withheld documents.

Further, to the extent to which the documents identify a taxpayer, the amount of a taxpayer's tax credit, and/or a taxpayer's tax liability, the documents constitute tax information and are confidential tax information pursuant to Tenn. Code Ann. §§ 67-1-1701(8) and -1702(a). Also, to the extent that the documents contain "data" used by the Department of Revenue to determine a taxpayer's tax liability, which includes the amount of tax credit the taxpayer will receive, the documents are tax information. *Bridgestone*, 2008 WL 2415483, at *12. Pursuant to Tenn. Code Ann. § 67-1-1702 tax information is confidential unless requested by the particular taxpayer in accordance with Tenn. Code Ann. § 67-1-1703.

As discussed above, we have determined that all of the information contained in the documents constitutes tax administration information. Furthermore, portions of the documents also constitute tax information. Because both tax administration information and tax information is excepted from disclosure pursuant to the Tennessee Public Records Act,

-18-

all other issues are pretermitted.[4]  Mr. Coleman contends that the requested documents should be released and that the Commissioners should merely redact the confidential portions.  However, because of our determination that the documents, in their entirety, constitute tax administration information, and are therefore confidential, redaction, even if required, is not a viable alternative.[5]  We note that Mr. Coleman asserted on appeal that the trial court erred in not finding waiver.  However, as set forth in his brief, he only argues that the trial court erred in not finding waiver of the ECD exception.  At no point in his briefs does he address or assert waiver of the tax exceptions.  Accordingly, this issue is waived on appeal.  *Osborne v. Mountain Life Ins. Co.*, 130 S.W.3d 769, n.6 (Tenn. 2004) ("It is true that not raising or briefing the issue before the trial court or the Court of Appeals is grounds for waiver of review") (citing *Alexander v. Armentrout,* 24 S.W.3d 267 (Tenn. 2000).  Also, we note that the trial court found that Tennessee had not adopted the Deliberative Process Privilege and that the Commissioners raised this as an issue on appeal.  Because we have decided this case on another ground, we do not find it necessary to address this issue.  However, our opinion should not be interpreted as an affirmance of the trial court's finding on this issue.

## Conclusion

For the foregoing reasons, we affirm the trial court's denial of Mr. Coleman's petition. We reverse the trial court's finding that the tax administration information and tax information exceptions do not apply.  All other issues are pretermitted.  Costs of this appeal are taxed to the Appellant, Larry H. Coleman and his surety for which execution may issue if necessary.



J. STEVEN STAFFORD, JUDGE

---

[4]The trial court determined that the requested documents were outside of the tax information and tax administration information exceptions, but that the documents were confidential and not subject to public disclosure under the ECD exception.  "This Court will affirm a decree correct in result but rendered upon different, incomplete, or erroneous grounds." *Hutcherson v. Criner*, 11 S.W.3d 126, 136 (Tenn. Ct. App. 1999) (citing *Gamblin v. Town of Bruceton*, 803 S.W.2d 690, 693 (Tenn. Ct. App. 1990).

[5]Tenn. Code Ann. § 67-1-1702(a).  Because we have found that redaction, even if required, would not be possible, we have not addressed whether the redaction statute, Tenn. Code Ann. § 10-7-503(c)(2), is applicable to the tax exceptions found in Tenn. Code Ann. § 67-1-1702(a).